All right, Mr. Merritt, before we start you on the time clock, I want to, let's hold the time clock please, Sarah. I want to just make a couple of points here. Your wife is the debtor in this case. You are not. While you have filed an appeal, you are not able to argue for her. Any arguments you make will be advanced only in connection with your appeal. And you have some barriers to appellate relief that she does not have because you're not the debtor, it isn't your case, it isn't your automatic stay, and because you did not raise any of these issues before the bankruptcy court. So we want to make sure that your wife understands that by not arguing herself, she may be waiving rights, and that you understand you are arguing only for yourself. You are not an attorney. You cannot argue for her. Okay? Now, can I address those points? In your time. So the time clock will start now. Okay, first of all, Your Honor, your initial order, I did not see where you wanted more than one person to argue. I thought it was just one person you wanted to be named. That's why we agreed to name myself. Secondly, my wife has a permanent disability, which is recorded below, and I found some authority which authorizes another person, spouse or otherwise, to prosecute an entire bankruptcy petition on behalf of a person who is disabled. I can cite the opinion either now or later. Secondly, the panel's November 13th order prohibited me from filing a motion to intervene under Rule 24, and so I would respectfully say that if that wasn't given, I would have immediately sent in the order, a request for an order for intervention, and I called one of your clerks. He said, no, since they ordered you not to file any additional papers, it's better to err on the side of respecting your order, and that's why I did not file a motion immediately as soon as I knew that was a question in your mind, and I would ask the court to accept a motion, an oral motion now on Rule 24 as well as California Section 387. You have whatever rights you have. You filed an appeal. We're not stopping you from arguing. Go forward. Okay, okay, but just to address, but okay, so I do have a code, essentially a code. There's another point as far as being a code debtor. There's other authority that says if I have a property interest in the property or in the, you know, financial transaction that also bankruptcy authority grants me under the bankruptcy code the authority to actually come and argue for that as well, but at any rate, there are three main points to this appeal. Number one, the bankruptcy order punishes myself and my wife for petitioning to... Okay, so I just want you to keep that, keep your argument crisp, okay? That's the unauthorized practice of law, so argue on behalf of yourself. Now, do you need my wife to give, I mean, she is here in the office, here listening now. That's your choice, sir. We will certainly allow you to split your time with her. That's the reason we gave you the admonition. Okay, all right then. So at any rate, I do believe that the bankruptcy order, orders punishes me for petitioning the courts for research, says, two, it deprives us, it deprives me from, of stripping me of property without due process of law, and the third point is that it permits the appellees to commit fraud upon the court by presenting false information to the court to rely upon. Now, the first point, the bankruptcy court orders violates our First Amendment, my First Amendment, our, and I have to say our because it's community property, and we filed it together. We filed non-bankruptcy federal and state litigation back in 2009, which was challenging initially the rescission, the refusal to give us our $200,000 back, but after we made an agreement with Bank of America, we accepted them keeping the $200,000 as long as they accepted our rescission, and basically, more than any other factor, you know, any other factor that the judge below in the bankruptcy court, he said that because we filed this non-bankruptcy litigation over the last 10 years, 10 or 11 years, that he was going to essentially what amounts to punish us by removing my co-debtor's stay from my wife's petition and granting interim relief, which just basically prohibited me or anyone else from protecting my property. Now, you have the right in a subsequent bankruptcy, all the relief does is the stay doesn't automatically arise, but you retain the right to petition the court in any future bankruptcy you might file for reinstatement of the stay. It's not for all purposes for all time, isn't that correct? I don't know. I'm not an attorney. Basically, I just, from what I learned, interim relief, and the judge made it clear, no future bankruptcies will be accepted on this property. And so, as far as I knew, we were 100% cut off from filing anything, but that's not even the gravamen of the point, but if you can just bear with this, in the Ninth Circuit opinion, published opinion, Merritt v. Countrywide, reported at 759 F3D 1023, the Ninth Circuit said we had the right to rescind our loans, and that we timely rescinded it. That's actually not what the Ninth Circuit said. The Ninth Circuit said your complaint sufficiently alleged those things. The Ninth Circuit didn't find that those things were true. Those are very different points. Okay, and I accept that correction there, Your Honor. The Ninth Circuit said, essentially, that we had a right to rescind it, and so at any point in 2009, we sent in a notice of rescission with a tender. We tendered our property. BFA did not provide us our tender, and then they went ahead and had us sign a modification agreement on February 24th, 2009, and gave us three days to review it with our attorney and decide whether or not we wanted to keep it. I think we understand that background from what you've written in your briefs, but didn't you litigate that in the federal courts and ultimately lose? No, sir. We only litigated the fraud. In 2009, the CEO can- Why hasn't the statute of limitations run? I mean, you either litigated it or it's so old, the statute can't possibly still be in place. Exactly, but basically, under state law as well as federal, essentially, a void security instrument is void, and we do not have to actually pursue litigation on it unless we are challenged some later time. In 2009, the CEO of BFA accepted our rescission after we even filed the lawsuit in March 12th, 2009. Basically, working with the staff in the CEO's office, they said, look, Dave, Mr. Merritt, he said, we're going to accept your rescission, let things play out in litigation, and you don't have to worry about foreclosure nor even making any payments. They rejected our payments that we sent in, and they said, we're just going to continue as long as you work in good faith to try to work out some replacement agreement, we'll go ahead and we'll accept the rescission. What happened, basically, between working with their staff, 2009, 2010, 2011, they finally sent the loan off. They assigned it to U.S. Bank, the trustee U.S. Bank, and SLS, and it was rescinded at the time they actually transferred it, or assigned it. Right, so Mr. Merritt, how does all of this affect the two orders that we have on appeal today? We've got the Enron relief from state order, and we've got the order dismissing the case. That's what we're calling here for. Right, it's essential because the court's order omits all of that history. It basically disregards that we had rescinded the loan, that the petition for bankruptcy even said it was an unsecured security instrument. Mr. Merritt, you know, again, going to Judge Brand's question, let's focus on the dismissal of the bankruptcy, where we had payments in the two bankruptcies that weren't all made on time, we had non-appearance at a 341A meeting, we had plans that had all kinds of problems with them that were never resolved. Why was it inappropriate for the bankruptcy judge, based on that, to dismiss the bankruptcy case? Well, dismissing the bankruptcy case, I believe, number one, the first bankruptcy case, he based his dismissal based upon there being one... I don't care about the first bankruptcy because the first bankruptcy is not before us. We're trying to keep you focused on the only things we can decide. So, focusing on the second bankruptcy case, why wasn't that dismissal appropriate? There were 16, I think, points the trustee raised in connection with the plan that were never addressed. Well, the bankruptcy case itself, we're dealing with a judge... What I know, the judge was very much upset at our non-bankruptcy litigation. That's what... Everything else comes from that. He was very upset, demonstrably upset, in court. Why did they litigate for this long? He did not want to recognize that the notes that he was actually removing a stay upon and granting end-ring relief was based upon rescinded loans. Now, my wife, as I told you, she's a permanently disabled person. We relied upon lawyers to navigate this. Essentially, she hired an attorney. I didn't want to do it. I was in state court, but she took the initiative and she pushed the bankruptcy and I had to support her because it's both our properties. The bankruptcy... The third attorney, Mark, whatever his name is, he said, let's go in and get a loan modification. Pay that for that. The appellees were totally adamant against any negotiating payments because that's what we've been trying to do for years. As far as the actual dismissal, yes, untimely, not coming up with petitions. It really goes to the fact that so many litigants, we were forced to go pro se because you pay what needs to be presented competently and that's one reason why I stepped in with my adversary case because I saw that he wasn't even pursuing that fact that it was unsecured. Now... Mr. Merritt, I'm going to stop you. Do you want to reserve time for rebuttal? Yes. Yes, I do. You're at the 427, Mark. Do you want to stop here and reserve time or keep going? No. I'll reserve time. Okay, good. I think that's a good idea. All right. The appellees, we have, while we have multiple appellees, we have advised you that we're not giving you extra time. Have you decided how to split your time? Appellees, counsel? Yes, Your Honor. This is Nanette Dumas. I'm a staff attorney for appellee Devin Durham-Burke, the Chapter 13 trustee in the bankruptcy case of Selma Merritt, the appellant. So I have offered to go first, and I'm going to try to keep my time very, very short because I believe that the crux of the appeal is the second part of the order that's on appeal, which is the order granting in rem relief from the automatic stay. All right. Thank you. So I will only speak to the dismissal order. Moreover, because the trustee's motion was only grounded on lack of prosecution and not on bad faith, I cannot speak to the aspect of the order dismissing the case for bad faith, except I will mention that in the Levitt analysis of bad faith, the court did refer to the lack of prosecution in its analysis of the first Levitt factor, which is prosecuting the case in an inequitable manner or filing a plan in an inequitable manner. So in that sense, it's the lack of prosecution supports the bad faith finding, but I'm not here to argue that because we never alleged it, and it was not raised in the appeal by us either, I think, appropriately. So you're really focusing on the lack of prosecution. What do you think are the principal features of that? Well, the principal features are the length of time that this case was pending. It was pending for over seven months on the day that it was dismissed, which at least in our division, that's a long time to have a case languished before it's confirmed. We had many, many unresolved objections. There were five iterations of the Chapter 13 plan. There were five objections by the trustee, and some of those objections were trailing since the very first objection was filed. The first objection was filed on August 6th, and the fourth amended objection was filed on January 22nd, 2020, and there were still three objection points from the August 6th, 2019 original objection that hadn't been resolved. So it looked as if this was kind of going to be a never-ending cycle of plan, plan amendment, objection, more plan amendments, maybe more objection points dropping off, but more being added. And I will just use, quote, my favorite quote, which I had in my brief from In re Warren, a bankruptcy case out of Idaho in 2011, where the court said, it is not the task of the Chapter 13 trustee or the court to essentially craft a confirmable plan for debtors via a series of objections and rulings. And this was that kind of a case where it just seemed like if we just kept it going, it was just, and I could see that the court felt that as well. It was just, it could go for another six months or a year or who knows how long, because it just seemed like nothing ever really got squared away and ready for confirmation. There was also the delay in attending the 341 meeting, they finally did that. The delay in making their first plan payment, they finally did that. But everything was always behind, starting with the fact that it was a skeletal petition when the bankruptcy case was first filed. So with that, I would just like to sum up by saying that the court did apply the correct legal standard, and there was ample evidence in the record and cited by the court in its factual findings for a dismissal of the case based on the ground alleged by the trustee, the appellee, that I'm representing for lack of prosecution under 11 U.S.C. Section 1307 C.1. All right. Thank you. Thank you. All right. Counsel? Yes, good afternoon, Your Honors. Mike Stoltzman for Appellees Specialized Loan Servicing in U.S. Bank. As Your Honors have noted, there's a lot of discussing here by Mr. Merritt, both orally and in his briefing, about the extensive litigation history in this case, particularly on the civil side. The one thing that strikes me before getting into, you know, the merit or lack thereof of these contentions is none of these issues were ever presented to the bankruptcy court by either Mr. Merritt or Mrs. Merritt. In our motion, we set out the same litigation history that had transpired up to the time of making the motion that we cited in our briefs. In contrast, Mrs. Merritt did not file or did not file any opposition that challenged any of those issues, did not tender any evidentiary objections to those issues, and certainly did not propose the kind of counter narration of these issues that Mr. Merritt is presenting orally today and that both appellants have presented in their briefs. So are you saying the arguments have been waived? That is a much more concise way of saying, of getting to my point, Your Honor, yes. Certainly, at the very least, the appellants haven't shown that the bankruptcy court erred by essentially adopting our version of events, which was uncontested at the bankruptcy court level. And Mr. Merritt, Mrs. Merritt, Mr. Merritt, whoever's point, at least in part, is they're asking that we reduce what we look at and basically adopt a rule that in deciding whether D4 relief is appropriate, looking at the stay relief piece of this, that we only look at the bankruptcy history. Could you respond to that? Yes, Your Honor. Stop me if I'm being too repetitive for my briefing, but the relevant provision just requires that we prove that there were multiple bankruptcy filings, meaning one or more, and that those filings were part of a scheme intended to delay creditors from seeking relief. In this case, no doubt there were multiple bankruptcy filings. And, you know, by using the word part of a scheme instead of solely evidencing a scheme, it leaves the bankruptcy court open to accepting any sort of evidence or other factual considerations outside the fact that multiple bankruptcy filings were made to show that scheme. For example, it's very common, as we did in this case, to show that a debtor in state court cases has multiple times tried to get a temporary restraining order or preliminary injunction or, you know, adjudicated the same issues that they might be raising in a bankruptcy case. So we have cited a few opinions in our briefing wherein a bankruptcy court was just met with two bankruptcy filings, but extensive other non-bankruptcy activities such as, you know, transfers of the property or civil litigation, namely attempts to prevent a creditor from foreclosing on a defaulted debt, and those courts upheld those interim orders, you know, based on that showing. So you would concede that in the first bankruptcy, D-4 relief wouldn't have been appropriate, but in the second one, you would say that's enough? That's correct, Your Honor. At least in terms of the numerosity requirements been met, and then you're suggesting we look at a broader horizon of issues. Yeah, and, you know, I think reading between the lines here, the numerosity requirement and the evidence of the scheme requirements, I think in some ways are two distinct but related concepts. And in this case, I don't think there can be any question that the numerosity requirement was met, whereas it would not have been met in the first case. And obviously, you know, it's our position that we've put forth substantial evidence before the bankruptcy court to support the bankruptcy court's finding that there was a scheme that was intended to hinder and delay our clients from pursuing their remedies from, you know, this loan that's been in default for 10 years and had accumulated more than $500,000 in arrears. Stepping back a little further to Judge Ferris's point, even if we were to look at the underlying merits of these contentions regarding the prior civil litigation history, the appellants put great stock in the fact that they had some success in intermediate appellate challenges, which resulted in, you know, Demers and other pleading challenges being overruled based on the idea that they had just alleged sufficient facts. But as we explained in our brief and at the bankruptcy court level, while that may be true, the ultimate disposition of those cases was in favor of the defendants and against appellants. And further, that those courts had found that there was no merit to the contention that the loan or the loan modification had been rescinded in either 2006 or 2009. In fact... But the state relief is a summary proceeding, so was it necessary, I mean, that the bankruptcy court, and the bankruptcy court is looking at this, and we've got Merit 1, 2, and 3 that were finally decided adversely to the merits. We've still got Merit 4 that's wherever Merit 4 is. It wasn't decided at the time of the motion. But does the bankruptcy court necessarily need to reach that? It's in a summary state, I mean, it's got to be, even for the scheme under D4, I'm just questioning how much the bankruptcy court had to get into that to have its decision be appropriate. Yeah, and I don't believe that the bankruptcy court necessarily had to adopt our version of events, you know, at every step of the way, but to consider all of the efforts and tactics that the appellants had undertaken over the course of the last 10 years as a means to and intending to hinder our clients from pursuing foreclosure proceedings. So I don't think that those findings or ultimate determination of the finality of those litigations was absolutely necessary. But, you know, I think the fact that they were decided in our client's favor is certainly helpful and further bolsters that the bankruptcy court did not abuse its discretion in issuing the NREM order. Since Your Honor had mentioned Merit 4, I think it's worth mentioning that since this appeal was briefed and within the last couple weeks, the court in Merit 4 did issue a ruling that addresses a lot of these issues. As the court may recall, you know, Merit 4 is alleging all these same issues about the idea that the 2006 loan was rescinded, that the 2009 loan modification was rescinded, and that interest may have agreed or conceded that these loans or modifications were rescinded. We made a vexatious litigation motion contending that, you know, the appellants had been raising all these same issues for, you know, several years, that they had been decided, or alternatively, Judge Taylor, as you had intimated earlier, that even if not decided would be barred by the statute of limitations. The trial court in Merit 4 agreed. They issued a new pre-filing order against the appellants, and after finding that they had no probability of success on the merits of these allegations, issued a $250,000 security order, which appellants were required to post as a condition to the bond. That bond has not been posted, and we will be seeking dismissal of Merit 4 for all those reasons. Very briefly, since we haven't touched on it too much yet, the reconsideration order is also at issue. And not to belabor too much of what we've provided in our briefing, but I believe the appeal from that order is untimely, and in any event without merit, though they contend we had no legal authority to file that motion, that authority was expressly provided by the bankruptcy court, including its procedures for the mortgage bankruptcy court level as well. With all that being said, unless any of your honors have any questions for me, I would cede the rest of my time. Anyone have any questions? All right, thank you very much for your argument. All right, Mr. Merit, and I see your wife is there as well. You have, the two of you have four minutes and 24 seconds. Your Honor, I'm going to give it over to my wife, but there's never been a prior foreclosure case that we initiated, nor any attempt to stop a foreclosure. And no, no, no prior case that ever been decided in favor of the appellees. It's only been Bank of America and Countrywide. You're, you're making the distinction between them as the defendants and the current defendants. What about Merit 3? Merit, all of them, Merit, the last, the current pending case, 2018 filed in 2000, is the very first case against these appellees, these defendants. Have you been declared a vexatious litigant in that case? Yes, just, just recently, they issued an order, pre-filing order, coming up with a bond. And essentially, that's, that is, that is something that took place. And I don't believe that should be, that should, how do you say, interfere with this case? Well, it wasn't before the bankruptcy court, but you're trying to put all kinds of things in front of us that weren't in front of the bankruptcy court. I don't disagree with you, though, that it's just an interesting fact. But no, the bankruptcy court didn't rely on that, and we're unlikely to do so either. And it's very hard for a pro se litigant to navigate all this. But at any rate, that has, rescission has never been adjudicated by anyone. That's categorical. You can check every document on file. There has never been an adjudication on rescission. That's what we're doing now. I'll let my wife take over. Well, you're not, let me ask you, Ms. Merritt, since you're going to argue, the question that I ask your husband is, why was the dismissal inappropriate? You broke up a little bit, Judge Taylor. You might want to repeat the question. The question is, why was the dismissal of your bankruptcy inappropriate? You didn't do things timely, and the bankruptcy court dismissed the case. Why was that error? Your Honor, I don't know. I don't know why the case was dismissed. I just, I'm sorry, the way that this holds, Mr. Stoltzman also put things in, bringing to you, Your Honor, I'm sorry if I don't come out too clearly. I am just having a little bit difficult time with this, but there, there, we, we did everything we were supposed to do. I was asked off during the first, during my, the first bankruptcy. The attorney died. That was out of my control. There was no way. Talk about the second bankruptcy, the second bankruptcy. No, I mean, anytime I, after I hired the attorney and whatever he asked me, I provided it. I had some medical issues, and initially, when I missed, when I was not able to go on the initial meeting, it was like, I was not able to physically go. I notified the attorney, and attorney, anytime he asked me for any information, I provided it. I'm not, I don't know. I'm not sure why, why it was dismissed. Anything that was asked of me, I tried to just do my part. Well, that's been provided in, in, in my capacity. So, and I don't have the legal understanding of why was it canceled, or why information the trustee said was not provided, and what was objections on it. I don't know what the objection was, or why they were not addressed. So, like I said, I mean, in my power, in my capacity, everything I could do, I did. In my capacity, everything the attorney asked me, I did. So, I'm not sure why was it ever actually not on par, or why, why there was deficiencies. I don't understand those. I mean, I don't understand this whole legal terminology. That's not, I have enough to kind of like be able to function, but, so I, I, I had to just trust the attorney, and whatever he was guiding me through, and just kind of go with his word. I, I don't know. To be honest with you, I have no understanding of why there was deficiencies. Why it was prolonged as long as it was. Okay. All right. Thank you very much. We've got, well, your time's up. Thank you very much for your arguments, and we will take the matter under submission.
judges: Taylor, Faris, Brand